## THOMSON–HOUSTON ELECTRIC CO. v. DAYTON FAN & MOTOR CO. et al.

(Circuit Court, S. D. Ohio, W. D. November 2, 1903.

No. 5,209.

1. PATENTS—INFRINGEMENT—ELECTRIC MOTORS.

The Thomson patent, No. 363,186, for an electric motor, *held* valid, as against the defense of insufficiency of description, and also infringed.

2. SAME.

The Thomson & Wightman patent, No. 399,801, and the Thomson patent, No. 428,650, both for improvements on the electromotor of the prior Thomson patent, No. 363,186, construed, and both *held* infringed.

In Equity. Suit for infringement of letters patent No. 363,186, for an electric motor, granted to Elihu Thomson May 17, 1887; letters patent No. 399,801, granted to Thomson & Wightman March 19, 1889, and No. 428,650, to Thomson, May 27, 1890—both for improvements on such motor. On final hearing.

Fish, Richardson & Storrow and Morrison R. Waite, for complainant.

Albert H. Walker, for defendants.

THOMPSON, District Judge. This is a suit to enjoin the infringement of letters patent Nos. 363,186, 399,801, and 428,650.

1. Letters patent No. 363,186 were granted to Elihu Thomson, for an alternating-current motor device, May 17, 1887, upon an application filed January 26, 1887. The claims of this patent, known in this litigation as the first Thomson patent, alleged to have been infringed by the defendants, are as follows:

"(1) An electromotor device for producing continuous movement in the same direction, consisting, essentially, of a closed circuit conductor such as described, and an inductive agent of alternately opposite polarity acting on said conductor, said conductor and inducing agent, one or both, being movable, as and for the purpose set forth.

"(2) An electromotor device consisting, essentially, of an endless conductor of copper or other diamagnetic material, as described, and an inductor acting on the same in the manner described to set up rapid induced alternations of current, whereby a continuous repulsion and consequent movement of the parts away from one another may be produced.

"(3) An electromotor device consisting, essentially, of a means for producing rapid alternations of electric or magnetic polarity, and a closed-circuit conductor arranged in inductive relation to the same, and adapted, as described, to carry induced currents, whose self-induction will cause them to be carried over to the phase of active repulsion by the inductor.

"(4) An electromotor device consisting, essentially, of a coil carrying an alternating electric current, a closed-circuit conductor arranged within the inductive influence of the magnetic field excited by said alternations, and an iron core for said exciting-coil.

"(5) The combination, with an alternating-current conductor, of a laminated or subdivided closed-circuit conductor of high conductivity and self-induction, arranged in inductive relation to the magnetic field excited by the conductor carrying the alternating current one or both of said conductors being properly mounted to move with relation to one another under the repulsive action produced through the alternating and induced currents."

These claims, and paragraphs 2, 3, 4, 5, 7, and 8 of the specification of the patent, fully describe the invention. The paragraphs of the specification referred to are as follows:

"My invention relates to a means for producing motion by the agency of alternating electric currents or alternating magnetic fields.

"I have discovered that, if a closed-circuit conductor of sufficiently low resistance and sufficient self-induction be placed in such relation to an alternating-current circuit or to an alternating magnetic field, alternating currents of considerable self-inductive power will be induced in said conductor, and if said conductor and the device, whether coil or magnet, acting inductively on the same, be properly mounted, so as to be movable, a continuous motion in the same direction may be produced, similar to that produced by the attraction of a core or armature by the agency of a continuous current, to the deflection of an iron needle by a continuous current, or to the continuous rotation of an armature-coil, as in the case of a continuous-current electric motor.

"My invention may be carried out by the employment of an alternating-current coil acting directly to induce currents in the closed-circuit conductor; or said alternating-current coil may be utilized in producing rapid alternations of magnetic polarity in a mass of iron, which mass, or the alternating magnetic field produced by said mass, may act on the closed-circuit conductor in proper way to set up alternating currents in the latter, the resultant motive effect of which I find to be a tendency to continuous movement of the two parts with relation to one another, instead of a movement first in one and then in the other direction; or the alternations of magnetic state in the inductive field of the closed-circuit might be produced in any other way, instead of by a coil directly or a stationary core of iron, the only conditions being that the magnetic fields of alternately-opposite sign shall be of proper kind to set up strong induced currents in the closed conductor, and that the alternations shall be of sufficient rapidity to result in a considerable lapping of each induced current through self-induction upon the magnetic field by which the succeeding induced current is set up.

"In the simplest form of my invention, I employ a coil of wire carrying an alternating current, and a closed-circuit conductor placed in proper relation to the coil to have alternating currents set up in it. I find that the effect of the alternating currents in the coil of wire is to cause a continuous strong repulsion of the closed-circuit conductor, due to the self-induction of the induced currents and their consequent tendency to be prolonged beyond the point of change of the inducing agent.

\*      \*      \*      \*      \*      \*      \*      \*      \*      \*

"Referring to Fig. 1, P indicates a coil of insulated wire arranged to be traversed by alternating currents of moderate rapidity. C indicates an outer cylinder or tube of good conducting material, such as copper. The conductor, C, or the coil, P, being mounted so as to be movable, it will be found that the passage of the alternating currents in P will cause a mutual repulsion in the directions indicated by the arrows. Such repulsion will be absent only when the center of C is exactly coincident with the center of P, so that there will be an equality of repulsive effects in both directions. The closed conductor or casing, C, may be made quite thick, so as to carry a very strong induced current. A vigorous thrust may then be obtained by the employment of strong alternating currents in the coil, P.

"The action is, I believe, due to the self-induction of the currents induced in the conductor, C, C, whereby such currents are continued beyond the point of change of intensity and polarity in the inducing alternating currents circulating in coil, P, so that where attraction would result repulsion is produced, such repulsion occurring at and near the time of maximum currents in the coil, P, and conductor, C, while whatever attractions occur exist near the zero of currents in both C and P. If an iron core, I, of iron wires or sheet iron, be added, as indicated in Fig. 2, the effects will be greatly intensified."

The remainder of the specification points out how the device may be made and used.

Of the defenses set up in the answer, but two are relied upon, namely, first, that the description of the invention in the specification of the patent is insufficient to enable any person skilled in the art to make or use the same; second, noninfringement.

In support of the first of these defenses it is urged that the case, so far as it is founded upon letters patent No. 363,186—

"Rests upon the device shown in figure 15 of the drawings of the patent, and upon claims 1, 2, 3, 5, and 6 of the patent, and upon the following paragraphs of the specification of the patent:

" 'A motion of rotation may be obtained by the devices already described by mounting the inducing coil, or the coil or the conductor in which the induced currents are excited on an axis, as indicated in Fig. 15, where the closed-circuit-conductor, C, C', is mounted on an axis (indicated at T).

" 'When alternating currents circulate in coil, P, the conductor, C, will be deflected to a position at right angles to the plane of the coil, P, as indicated by the dotted lines, K, K. The coil, P, might be used as a closed-circuit conductor, and alternating currents passed through the coil, C, with a similar result.'

\* \* \* \* \* \* \* \* \* \* \* \*

"If the alternating-current coil and the closed-circuit conductor or coils or their current planes exactly coincide, they will remain at rest; but a very slight displacement will give rise to a deflection to one side or the other, which will be continued until the coils are at right angles to one another."

It is further urged that a device made in conformity with that of figure 15 will not be operative, and that the armature, if put in motion by external means, will not revolve continuously under the influence of the alternating current in the magnet coil, P, but will turn only through a quarter of a revolution, and then stop. On the other hand, the claim of the complainant is that, if given a start sufficiently strong to carry it past the "dead point," it will continue to run and rotate indefinitely under the influence of the alternating current in the magnet coil, P. To determine the fact thus put in issue, the defendants caused three machines to be made in substantial accordance, as it is claimed, with Fig. 15 of the patent, and these machines were introduced in evidence, and the makers thereof testified that when tested they were found to be inoperative; that, although given a strong start, they would rotate only for a short time, and then stop. The complainant made four such machines, and the maker testified that, when given a sufficient start, they ran continuously as long as the alternating current was maintained in the field coil. Two of these machines (complainant's Exhibit Motor No. 4 and defendant's Exhibit Parry's Apparatus) are conceded by both parties to be "made in undebatable conformity with that of figure 15 of the patent"; and at the hearing these machines were exhibited to the court, and, the current being applied, both were successfully operated at a high rate of speed. The evidence therefore fails to support this defense.

But the defendant denies that its device, complainant's Exhibit Defendant's Motor, infringes letters patent No. 363,186. The device of the defendant is an alternating current electric motor of the induction type. It has a coil carrying an alternating electric current; a closed-circuit conductor of copper, or, rather, a series of such conductors, within the meaning of claim 5 of the patent;

an inductive agent of alternately opposite polarity acting on such conductor, the conductor being movable rotatably; and these are means for producing induced circuits of rapid alternations, whose self-induction will cause them to be carried over to the phase of active repulsion by the inductor. The iron core for the exciting coil will be found in the polar projections of the field magnet. In short, it embraces all the elements of claims 1, 2, 3, 4, and 5 of the patent, and there can be no classification of induction motors, such as is suggested by counsel for the defendant, which would relieve the defendant from liability for the infringement of these claims.

But it is alleged that the facts relied upon to show infringement will equally show infringement of the Tesla patents, Nos. 511,559 and 511,560, and that this court has heretofore found that the defendant's device infringes these patents; the suggestion being that a finding in favor of the complainants in this case would be inconsistent with the former finding. No defense is set up in the answer to warrant this suggestion, but it could not be entertained if it were properly before the court. Letters patent Nos. 511,559 and 511,560 do not necessarily employ the Thomson invention. The purpose of one of these patents is to start a single-phase motor by employing the Tesla field of rotating polarity, and, when given speed is attained, to continue the rotation by alternating the poles; and in the other, to distribute the currents to the motor circuits by the Tesla method of derivation from a single original source—a single line of transmission from the generator—and these purposes can be accomplished without infringement of the Thomson patent.

2. Letters patent Nos. 399,801, issued to Thomson & Wightman, and 428,650, issued to Elihu Thomson (the first dated March 19, 1889, and the second dated May 27, 1890), in the language of complainant's counsel—

"Relate to appliances auxiliary to, or improvements upon, those used in effecting rotation in accordance with the invention of the first Thomson patent in suit, and adapted to act to give a directive start to the rotation of the movable member of the motor."

The claims of these patents alleged to have been infringed are claims 12 of No. 399,801, which reads as follows:

"(12) The combination, with an alternating inductor, of a local phase distorter or modifier and an armature subjected to the simultaneous action of the inductor and the distorter or modifier."

And claims 1, 2, 5, and 6 of No. 428,650, which read as follows:

"(1) The combination, with an alternating inductor, of an induction modifier or retarder located to one side of the general magnetic axis, and serving to produce a compound field of alternating induction whose parts differ or are displaced in phase.

"(2) The herein-described method of producing two sets of magnetic alternations differing in phase at the free pole of an alternating coil or magnet, consisting in shading or inductively retarding the alternations in a part of said magnetic field to one side of the general magnetic axis, as and for the purpose described.

\*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*

"(5) The combination, with a magnet producing an alternating magnetic field having parts lying in the same general plane transverse to the general

magnetic axis, differing or displaced in their phases of alternations, of an armature in the field of inductive influence of said magnetic field, as and for the purpose described.

"(6) The combination, with an alternating magnetic field, of a modifier or retarder operating upon a portion of the field to one side of the magnetic axis to produce a lagging in the alternations, and an armature placed within the compound field thus produced, which field has, as described, adjoining portions in which the alternations have their phases displaced."

The Thomson & Wightman device employs two field currents, alternating currents, one transmitted from an external source to coil, P, by which the other is induced in closed-circuit coil, S. The coil or magnet, P, is designated as the inductor, and the coil, S, as the modifier or retarder. Both coils are wound on the same pole-piece. The two currents differ in phase, owing to the self-induction of the induced current. "The consequence of this is that the alternations of the inductive field, of whatever nature that field may be, over or in proximity to the conductor, S, will be retarded from the time of development of the field of the inductor at those points not influenced by said conductor, S, or where the coil, S, is not applied, so that in effect there is produced in juxtaposition a compound field of induction, having alternations with a displaced development of field or phase. The retarder, S, is preferably applied, as shown, at or near one end of the inductor, P. The effect of the retarder applied to a part of the inductor as shown may also be considered as resulting in the production of a consequent pole or magnetic pole, which is the resultant of the currents in the inductive band or circuit, S, and in the coil, P, such magnetic pole, however, changing constantly in intensity or position, while at the same time the magnetic effects develop themselves during the flow of alternating currents in the coil, P, in different times or intensities at various parts of said coil." Now, if an armature, such as is employed by the defendants in their device, "be mounted so as to be free to turn in a position where it will be subjected to the action of the two parts of alternating field produced by the modifying action of the conductor, S, and by the operations of the portions of conductor, P, not subjected to the action of S, or subjected in a less degree to such action, currents will be induced" in the armature, which will result in the rotation of the same. By this method the equivalent of the Tesla field of rotating polarity, or progressive shifting of the poles, is produced; but the Tesla method, as shown in letters patent Nos. 382,279 and 555,190, for the individual and independent action of the field currents upon the armature, is not found in the Thomson & Wightman device, nor is the compound simultaneous action of the field currents upon the armature of the Thomson & Wightman device found in the Tesla method, nor is the winding of the coils on the same pole-piece found in the Tesla method.

The characteristic and essential features of the Thomson & Wightman invention are the overlapping or superposition of the two coils on the same magnet, and the compound simultaneous action of the fluxes upon the armature, as distinguished from the winding of the coils on separate pole-pieces, and the individual and

independent action of the fluxes in the Tesla devices. The Thomson & Wightman method is used in the defendants' device, and they thereby secure a material advantage, by being able to employ all the poles after the starting circuit referred to by complainant's expert as the "green circuit" is cut out, whereas, if they followed the Tesla method, they would be able to employ but one-half of the poles. The defendants' device employs the Tesla field of rotating polarity, or the equivalent thereof, but uses the Thomson & Wightman method of obtaining it; and the defendants thereby secure a material advantage not known to the Tesla method, and cannot escape liability for the infringement upon the ground that they have heretofore been held liable for the infringement of the Tesla patents. The second Thomson patent is for an improvement upon the Thomson & Wightman invention, which consists essentially in applying an induction modifier or retarder to a part of the field of induction lying to one side of the general magnetic axis of the inductor.

The defendants seek to distinguish the method of their device from that of the Thomson & Wightman and the second Thomson patents, upon the ground that the current in the starting coils is not induced by the current flowing in the primary coils, which complainant's expert designates the "blue coils," but is derived from that current by the Tesla method, whereas in the device of the Thomson & Wightman and the second Thomson patents the current in the modifying coil is induced by the primary current from the generator. This method of supplying the current for the modifier, however, is not an essential feature of the invention of Thomson & Wightman and the second Thomson patents. The inventions covered by these patents assume the presence of the current in the modifier through some or any of the then well-known methods of supplying it, and the choice of one rather than another will neither add to nor detract from the invention. The methods by induction and by derivation were then known to the art, and the inventors were free to choose either one.

A decree will be entered for the complainant as prayed in the bill.